Argued and submitted February 21, reversed and remanded to LUBA for further proceedings May 17, appeal dismissed by stipulation October 27, 1989

## McCAW COMMUNICATIONS, INC., et al,
### *Respondents,*

*v.*

## MARION COUNTY et al,
### *Petitioners.*

### (LUBA 88-068; CA A50771)
773 P2d 779

Robert C. Cannon, Marion County Legal Counsel, Salem, argued the cause and filed the brief for petitioner Marion County.

Wallace W. Lien, Salem, argued the cause and filed the brief for petitioner Barbara Hanneman.

Timothy V. Ramis, Portland, argued the cause for respondents. With him on the brief were Kenneth M. Elliott and O'Donnell, Ramis, Elliott & Crew, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's reversal of Marion County's denial of respondents' application to place a 140-foot cellular telephone transmission tower and a related structure on a 21-acre parcel in an agricultural zone. The principal issue is whether the tower is allowable under section 137.020(d) of the county zoning code, which includes among the permitted uses in the zone:

> "Utility facilities necessary for public service, except commercial facilities for power generation."[1]

Both the county and LUBA treated the question as one of law. The county answered it negatively, and LUBA answered it affirmatively. We reverse and remand.

We agree with LUBA that the proposed tower is a "utility facility" and that it relates to the provision of a "public service." It is unnecesary for us to add to LUBA's analysis of those terms in the ordinance. *See also* 42 Op Att'y Gen 77 (1981) (construing the analagous language in ORS 215.213(1)(d)). We do not agree with LUBA's understanding of the word "necessary," which it based on its construction of a similar ordinance provision in *Meland v. Deschutes County,* 10 Or LUBA 52, 56-57 (1984):

> "The phrase 'utility facility necessary for public service' in Section 1.030 is ambiguous because of the difficulty in determining what it is that must be necessary. At least three interpretations are possible.
>
> "Petitioner ascribes two different meanings to the phrase, either of which requires findings missing from the county's order. The first is that the facility must be found to provide a *necessary public service.* That meaning would require a finding that, without the service, there would be substantial hardship or difficulty. The second meaning proposed by petitioner is that the term requires a finding that it is *necessary to locate the facility in the EFU zone* to serve the residents there.
>
> "Respondent county, on the other hand, asserts a third

---

[1] The ordinance provision essentially duplicated ORS 215.213(1)(d), as that statute read when the ordinance was enacted. The statute was later amended by Oregon Laws 1983, chapter 827, section 27b to exclude "transmission towers over 200 feet in height" from the permitted use. The county did not make a corresponding amendment to the ordinance.

meaning. It contends the phrase means a facility that is *necessary in order for an entity to provide a public service.* That meaning is expressed in the findings:

> "It supplies the public with a commodity or service, a public consequence or need. *The transmission tower and maintenance building are facilities which are necessary to provide that service.* (emphasis added) * * *

> "This latter meaning was the interpretation of the Oregon Attorney General [in 42 Op Att'y Gen 77, *supra*] relied upon by the county. That opinion considered the statutory term 'utility facilities necessary for public service,' as used in ORS 215.213(1), and rejected the second interpretation urged by petitioner. The county zoning ordinance does not indicate an intent that permitted uses are to be located in EFU zones only if they cannot be located elsewhere. Petitioner says that intent is implied or else the word 'necessary' is superfluous. However, if the word is deemed to describe a facility as the county has interpreted the phrase - *i.e.,* a facility which is necessary to provide the public service of radio transmission - the word is not superfluous or redundant. It is there to distinguish necessary facilities from unnecessary ones, such as advertising signs or possibly storage yards." (Emphasis in original; footnotes omitted.)

Section 137.020, like its statutory analog, defines non-farm uses which are permitted in farm zones. However, state and local provisions of that kind must be construed, to the extent possible, as being consistent with the overriding policy of preventing "agricultural land from being diverted to non-agricultural use." *Hopper v. Clackamas County,* 87 Or App 167, 172, 741 P2d 921 (1987), *rev den* 304 Or 680 (1988). Therefore, when possible, the non-agricultural uses which the provisions allow should be construed as ones that are "related to and [promote] the agricultural use of farm land." *Hopper v. Clackamas County, supra,* 87 Or App at 172. When no such direct supportive relationship can be discerned between agriculture and a use permitted by the provisions, the use should be understood as being as nondisruptive of farm use as the language defining it allows.

In the abstract, LUBA's choice among the three interpretative options it described in *Meland* might have been

as linguistically supportable as either of the others.[2] Given the legislative purpose, however, we are unable to agree that the word "necessary" has no relationship to the proposed location of the use on land zoned for agriculture. We conclude that, for a "utility facility" to be permitted under section 137.020(d), the applicant must establish and the county must find that it is necessary to situate the facility in the agricultural zone in order for the service to be provided.

Because it regarded the issue as being solely one of law, the county made no finding on that question. Although LUBA also regarded the appeal as raising only a legal issue, it said:

> "In this case, the record establishes that a transmission tower to receive and broadcast telephone messages to mobile cellular telephones is necessary for McCaw to provide its service in the subject geographical area."

The evidence was conflicting as to whether it is necessary to locate the tower in the zone, and a finding on that question is for the county to make in the first instance, rather than for LUBA to make in this appeal.

Reversed and remanded to LUBA for further proceedings not inconsistent with this opinion.[3]

---

[2] LUBA apparently based its choice in *Meland* on the fact that the county had interpreted its ordinance in that manner, and that the county's interpretation was "reasonable." 10 Or LUBA at 57. LUBA took too narrow a view of its interpretive authority. *See McCoy v. Linn County,* 90 Or App 271, 752 P2d 323 (1988).

[3] LUBA concluded that, given the basis for its disposition, it was unnecessary to decide two of respondents' assignments on their merits. We imply no view about whether the two assignments need to be decided on remand in *this* appeal. LUBA must make the initial decision as to whether our disposition revitalizes the assignments.

Because we reverse LUBA's order, we do not reach petitioners' contention that LUBA erred by reversing rather than remanding the county's decision. We note, however, that our opinion may require a remand to the county after LUBA concludes its proceedings on remand.