Argued and submitted December 20, 1991, affirmed February 12, 1992

WAKER ASSOCIATES, INC.,
*Respondent,*

*v.*

CLACKAMAS COUNTY,
*Petitioner.*

(LUBA 91-016; CA A72334)

826 P2d 20

Michael E. Judd, Chief Assistant County Counsel, Oregon City, argued the cause for petitioner. With him on the brief was Clackamas County Counsel, Oregon City.

Stephen T. Janik, Portland, argued the cause for respondent. With him on the brief were Richard M. Whitman and Ball, Janik & Novack, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Clackamas County seeks review of LUBA's remand of the county hearings officer's denial of respondent's application for a conditional use to operate a golf course in an exclusive farm use zone. There were three bases for LUBA's remand. We agree with LUBA's analysis of two of them, and the county's assignments challenging those bases do not require discussion. We also agree with LUBA's disposition of the third issue, but for reasons that differ from LUBA's.

Golf courses are allowable conditional uses in the EFU zone under the county's plan and its zoning ordinance. *See also* ORS 215.213(2)(f); ORS 215.283(2)(e). The ordinance requires, in effect, that conditional uses in EFU zones not conflict with the plan's agricultural goals, which are:

"A.   To preserve agricultural lands;

"B.   To protect agricultural lands from conflicting uses, high taxation and the cost of public facilities unnecessary for agriculture;

"C.   To maintain the economic base of Clackamas County and increase its share of the market;

"D.   To increase agriculture income and employment by creating conditions which further the growth and expansion of agriculture and which attract agriculturally related industries;

"E.   To maintain and improve the quality of air, water and land resources;

"F.   To conserve scenic and open space; and

"G.   To protect wildlife habitats."

The hearings officer found that the proposed golf course was inconsistent with the first four goals and was consistent with some of the others. He then concluded:

"In summary, on balance, this application is not consistent with the Goals and Policies of the Plan which are applicable. The proposal is consistent with some applicable Plan provisions, but it is in conflict with others. Most importantly, it is in conflict with the provisions of the Agriculture Sections of the Plan which deal with preservation and protection of agricultural lands. It is appropriate to balance those Goals and Policies which are furthered against those Goals

and Policies which are in conflict in order to reach a conclusion as to whether the proposal is consistent overall. Any such balancing must be done with the overriding policy of our land use laws of this state and county to preserve agricultural lands. Although there is a demonstrated need for additional golf course facilities, there is no evidence that such need must be met on prime farm land such as the subject property. In balancing the competing interests and goals as to this application, this application is in conflict with the most important of those Plan provisions, and with the Plan as a whole."

Respondents appealed to LUBA and contended, *inter alia*, that the hearings officer erred by applying a "balancing test." They also argue that the balance was really not one at all, but was instead an erroneous conclusion that a conflict "with a single goal — preservation of agricultural lands" — must result in the disapproval of the use. LUBA agreed, and we quote its reasoning at length:

"In *Rowan v. Clackamas County*, 19 Or LUBA 163 (LUBA No. 89-154, May 9, 1990), *aff'd* 103 Or App 130[, 796 P2d 401] (1990), we affirmed a county decision applying essentially the same balancing approach that was applied by the hearings officer in this case. The balancing approach applied by the county in *Rowan* and in this case begins with the important assumption that plan Agriculture Goals A, C and D *necessarily* are violated by a conditional use which puts agricultural land to nonfarm use. If such violations alone require denial of any request for conditional use approval for such nonfarm uses, the specific provision of ZDO 402.06(B)(7) that such uses may be approved in the applicable EFU zones is rendered a nullity. The balancing approach followed in *Rowan* avoids this conflict.

"The balancing approach followed in *Rowan* is not the only way to resolve conflicts between code provisions which specifically provide that a use is potentially allowable in a zoning district and other code provisions that effectively prohibit the use. In such circumstances, the latter code provisions may be deemed not to apply to allowable conditional uses because they presumably were not intended to render the former code provisions a nullity. *J. R. Golf Services[, Inc.] v. Linn County*, 62 Or App 360, 661 P2d 91 (1983).

"In *J. R. Golf Services*, the Court of Appeals resolved a conflict between a zoning ordinance provision allowing golf

courses as a conditional use in the county's EFU zone with other zoning ordinance provisions which precluded approval of a golf course in the county's EFU zone, by holding that the latter standards were inapplicable. The court held the code language stood as an unavoidable barrier to ever approving a golf course in the EFU zone. *Compare Von Lubken v. Hood River County*, 106 Or App 226, [806 P2d 727, *rev den* 311 Or 349] (1991), where the Court of Appeals concluded that while the disputed plan criterion would severely limit the county's ability to approve a golf course in its EFU zone, the criterion would not totally preclude such approvals.

"We agree with [respondent] that *J. R. Golf Services* provides the correct way to resolve a conflict between code provisions that (1) specifically allow approval [of] a nonfarm use in an EFU zone as a conditional [use], but (2) established approval standards for such a use that prohibit its approval in all cases. The balancing approach we approved in *Rowan* is flawed because it allows an otherwise applicable criterion to be violated based on an essentially standardless balancing rationale. Such an approach invites the kind of ad hoc weighing of criteria that occurred in *Rowan*, and in this case, and makes the decision making process unpredictable. We conclude the more straightforward resolution of such conflicts applied in *J. R. Golf Services* is required where the kind of actual conflict between code provisions that existed in that case is present. To the extent our holding in *Rowan* is to the contrary, it is overruled." (Emphasis LUBA's; footnotes omitted.)

However, LUBA then concluded that the conditional use under the county provisions could be construed as being consistent with and potentially allowable under the agricultural goals, and it remanded for the county to "apply a more limited interpretation."

■ ■  We agree that the hearings officer's reasoning appears to focus on the first of the agricultural goals — preservation of agricultural land — to the exclusion of the others. We, therefore, also agree with LUBA that a remand to the county is necessary for a reinterpretation or reapplication of the goals that demonstrates that due consideration has been given to all of them. However, we do not agree with all of the analysis by which LUBA reached that result. In particular, we think that some balancing or weighing process is both

permissible and necessary in county actions on conditional use applications.

We do not understand the parties to argue or LUBA to have concluded either that compatibility with all seven of the goals is necessary for a proposed use to be allowed or, at the other extreme, that compatibility with any one of the seven must necessarily result in the approval of a proposed use. It follows that county decision-makers will often be confronted with situations, like this one, where a use is compatible with some of the goals and incompatible with others. It is not possible to approve or disapprove a use in those situations without engaging in a balancing exercise. Although the effect on and consistency of a proposed use with each of the goals must be considered, the weight to be given a goal and the magnitude of the effects that particular proposed uses will have on the values that the different goals protect will inevitably vary from case to case. Some of the goals may be totally irrelevant to some proposed conditional uses. It is unlikely, for example, that room and board arrangements in existing residences, a conditional use that ORS 215.213(2)(u) and ORS 215.283(2)(t) allow counties to recognize, would have much, if any, effect on the conservation of scenic space or on the protection of wildlife habitats.

■ In addition to the fact that some goals will be irrelevant to some proposals, it is equally apparent that some proposed conditional uses will have more profound effects on some goals than on others and that some proposed uses will have greater effects on the goals generally than will other proposed uses. This, of course, is a case in point. The effect on goals A, B and D of the proposed use of a 182-acre area for a golf course will obviously be greater than would the use of part of an existing residence for a room and board arrangement of the kind earlier described. In sum, although we agree with LUBA that none of the goals may be disregarded *ab initio*, a balancing process that takes account of relative impacts of particular uses on particular goals and of the logical relevancy of particular goals to particular uses is a decisional necessity. *See Union Oil Co. v. Board of Co. Comm. of Clack. Co.*, 81 Or App 1, 724 P2d 341 (1986); *see also Oswego Properties, Inc. v. City of Lake Oswego*, 108 Or App 113, 814 P2d 539 (1991). The way in which the factors are

balanced is a question for the local government to answer initially, subject to LUBA's and our review.

We do not share LUBA's concern that there is unacceptable "ad hoc" and "unpredictable" decision-making in a balancing process of that kind. The facts that there are a number of standards, and that the relative bearing that each might have on the permissibility of a particular proposal cannot be known until the facts of the proposal are known, does not make the process "standardless." Moreover, those facts do not defeat the fairness of the process, as long as informed participatory rights, findings requirements and other procedural protections are satisfied. *See Martini v. OLCC*, 110 Or App 508, 823 P2d 1015 (1992).

We also question LUBA's conclusion, which it ascribes to *J. R. Golf Services, Inc. v. Linn County*, 62 Or App 360, 661 P2d 91 (1983), that, whenever the approval criteria in an ordinance would necessarily prohibit the granting of any application for a conditional use ostensibly allowed by the ordinance, the use must invariably be deemed permissible and the criteria inapplicable. It is at least equally arguable that the converse should be true: The approval criteria should be given effect over conditional uses that they totally prevent, so that conditional nonfarm uses of agricultural land will not be given precedence over the primary farm uses that the approval criteria protect.

If there had to be a *per se* rule one way or the other, the latter one might well be preferable. We said in *McCaw Communications, Inc. v. Marion County*, 96 Or App 552, 555, 773 P2d 779 (1989):

> "Section 137.020, like its statutory analog, defines non-farm uses which are permitted in farm zones. However, state and local provisions of that kind must be construed, to the extent possible, as being consistent with the overriding policy of preventing 'agricultural land from being diverted to non-agricultural use.' *Hopper v. Clackamas County*, 87 Or App 167, 172, 741 P2d 921 (1987), *rev den* 304 Or 680 (1988)."

However, we do not read *J. R. Golf Services* as stating a *per se* rule applicable to all cases. Rather, it interpreted a particular ordinance in a particular way, and we confine it to its facts.

We, of course, agree with LUBA that the threshold objective in construing legislation is to harmonize provisions that bear on the same subject and, where possible, to read provisions that allow conditional uses and those that establish approval criteria for them as being consistent. We also agree that that objective cannot be achieved when the criteria would prevent the approval of the use in all cases. We emphasize, however, that such an inconsistency does not exist simply because the approval criteria are highly restrictive. *See Von Lubken v. Hood River County*, 104 Or App 683, 803 P2d 750 (1990), *on reconsideration* 106 Or App 226, 806 P2d 727, *rev den* 311 Or 349 (1991).

Affirmed.