Argued and submitted August 26, affirmed October 14, 1992

## James NELSON,
*Petitioner,*

*v.*

## BENTON COUNTY,
Melvin B. Wood, Erma Jean Wood
and Marys Peak Group Sierra Club,
*Respondents.*

(LUBA 92-035; CA A75872)

839 P2d 233

George B. Heilig, Corvallis, argued the cause for petitioner. With him on the brief was Cable Huston Benedict Haagensen & Ferris, Corvallis.

Janet S. McCoy, Corvallis, argued the cause and filed the brief for respondent Benton County.

Jacquelyn M. Corday, Portland, argued the cause for respondents Melvin B. Wood, Erma Jean Wood and Marys Peak Group Sierra Club. With her on the brief were Thomas E. Lindley and Miller, Nash, Wiener, Hager & Carlsen, and David R. Barrow and Byrne & Barrow, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Benton County denied petitioner's application to build a nonfarm dwelling on his 1.37-acre parcel in an exclusive farm use zone. LUBA affirmed the decision. Petitioner seeks review, and we affirm.

The county concluded that the proposed dwelling did not satisfy the criterion in its ordinance, paralleling that in ORS 215.283(3)(d), that nonfarm dwellings be located on land that is generally unsuitable for agricultural production. The county based its finding that petitioner's property is not generally unsuitable on a number of considerations, including:

> "[T]he parcel could be farmed in connection with the commercial farm operation to the north and east, and it could be utilized for related farm purposes by nonadjacent farmers who farm scattered non-adjacent parcels."

The county apparently relied for that part of its finding on *Rutherford v. Armstrong*, 31 Or App 1319, 1324, 1326-27, 572 P2d 1331 (1977), *rev den* 281 Or 431 (1978), where we said:

> "[T]he county argues that a five-acre farm would be unprofitable, which petitioner concedes. However, there is no evidence in the record that the subject five-acre parcel cannot be sold, leased or by some other arrangement put to profitable agricultural use.
>
> "* * * * *
>
> "We conclude that the county's finding concerning ORS 215.213(3)(d) is erroneous as a matter of law. In order for lands to qualify under that paragraph, the land must be generally unsuitable for the production of farm crops or livestock considering the terrain, soil conditions, drainage, flooding, vegetation, location and size. The fact that the property cannot be farmed as an economically self-sufficient farm unit is irrelevant if it is otherwise suitable to produce farm crops and livestock."

Petitioner's first assignment reads:

> "The petitioner proved, as a matter of law, that the subject parcel is not generally suitable for farm use. LUBA erred in holding that petitioner failed to meet his burden of proof on this approval standard."

We understand the principal points of the assignment and the supporting argument to be that the county's finding was not supported by substantial evidence in the whole record and that the method by which the county weighed the evidence was flawed. LUBA correctly rejected the first point, and petitioner's argument to us concerning it requires no discussion.

■    Petitioner's second point is that LUBA erred by upholding the county's finding without requiring it to apply a "balancing test" to the evidence in arriving at the finding.[1] Petitioner relies on *Waker Associates, Inc. v. Clackamas County*, 111 Or App 189, 826 P2d 20 (1992), where we held that it was proper for the local decision-maker to accord different weight to different approval standards or criteria that are applicable to the same decision. This situation is not analogous, because the challenged finding related to only one approval standard — general unsuitability — which *had* to be satisfied for the proposed dwelling to be permitted. The question before the county was not what weight the standard itself should be given, but what weight to give the evidence tending to show that the standard was or was not satisfied. Petitioner's argument is self-defeating, because the county necessarily and obviously did balance and weigh the evidence. Petitioner's real complaint is that the way in which the county weighed the evidence did not balance in his favor. However, if there is substantial evidence in the whole record to substantiate the finding, neither LUBA nor we may disturb it. The claim of error fails.

■    In his second assignment, petitioner contends that LUBA erred by concluding that the county's decision did not give rise to a taking, in violation of the state and federal constitutions. He does not appear to argue, nor would we agree if he did, that denial of the dwelling permit deprives him of all substantial beneficial or economically viable use of his

---

[1] To avoid the pitfalls of paraphrasing this aspect of petitioner's argument, we quote it in its entirety:

"LUBA held, in effect, that the mere fact of good soil and topography on the property is sufficient to support a finding of general suitability. Petitioner's position is that this is too narrow or too strict an evidentiary standard. Mere presence of these conditions should not be the sole criteria. Actual usages should govern. If a balancing test were used, Petitioner has proved by example, as a matter of law, that his parcel is too small to be suitable for farming."

property. Hence, he does not assert that the county's decision runs afoul of those basic tests for a regulatory taking under the two constitutions, or of any other test that relates peculiarly to regulatory takings. *See Agins v. Tiburon*, 447 US 255, 260, 100 S Ct 2138, 65 L Ed 2d 106 (1980); *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978). Instead, petitioner makes three different points.

Petitioner first appears to argue that the deprivation of the ability to live on one's property is an *ipso facto* taking. He cites no apposite authority for that proposition, and we are aware of none. There are many viable economic and beneficial uses of land other than residential use.

Petitioner's second argument is:

"Petitioner's land must be utilized for farm use and, because of its limited size, it must be farmed in conjunction with adjacent land * * *. Petitioner submits this effectively forces the sale or lease of the land. Petitioner's position is that this is an exaction of a much broader scope than the access burden which had been contemplated by the State of California and denied as an unconstitutional taking in *Nollan v. California Coastal [Comm'n]*, 483 U.S. 825, 97 L. Ed. 2d 677, 107 S. Ct. 3141 (1987). For that same reason, Petitioner urges this court to overrule *Rutherford [v. Armstrong, supra]*, or announce its inapplicability to nonpartitioning cases where size is an issue."

Petitioner's premise is not correct. The county's decision does not compel or even suggest that he sell, lease or do anything else with his land. Rather, it holds that, along with other reasons, the property is not generally unsuitable for productive farm use because it can be operated for that purpose in combination with adjacent or nearby properties; therefore it does not qualify for a nonfarm dwelling. As we did in *Dodd v. Hood River County*, 115 Or App 139, 836 P2d 1373 (1992), and *McKay Creek Valley Assn. v. Washington County*, 114 Or App 95, 834 P2d 482 (1992), LUBA questioned the relevance of the analysis in *Nollan v. California Coastal Comm'n, supra*, to cases like this one, which are based on regulations of land use rather than public acquisitions, owner dedications or other affirmative requirements or burdens that the government attaches as conditions of development.

We now conclude that the "exactions" versus "impacts" analysis and the related analyses have no relevance in cases where a proposed use is disallowed because the standards under a general land use regulation have not been met. Nothing is "exacted" in such cases. Here, for example, petitioner has not been required to give up any property interest or to conduct or allow any activity on his property that relates to the impacts of a permitted development. The local government has not exacted a *quid pro quo* to ameliorate the effects of development; rather, it has determined that the development is not permissible at all under the applicable land use regulations. Under *Nollan*, the exactions versus impacts analysis arises only when a condition of development is "substituted" for an outright regulatory prohibition, 483 US at 836; *see also Dolan v. City of Tigard*, 113 Or App 162, 832 P2d 853 (1992), and that analysis does not apply to regulatory prohibitions *per se*. That is all that is involved here. The only constitutional tests that have any application are those pertaining to regulatory takings. Because petitioner retains an economically viable and substantial beneficial use of his property, there has been no regulatory taking under either constitution.

Petitioner's invitation that we overrule *Rutherford v. Armstrong, supra*, as he understands it and as LUBA construed it in *Stefan v. Yamhill County*, 18 Or LUBA 820 (1990), requires no consideration. He makes the point only as part of his taking argument and does not argue here that the application of *Rutherford* to land use decisions of the kind in question is erroneous for other reasons. Because no taking has resulted, petitioner presents no question about *Rutherford's* continuing vitality that is cognizable here.

■ Finally, petitioner argues that ORS 215.243 mandates the preservation of large blocks of agricultural land. He reasons that that means *existing* large parcels. The county found that land is not "generally unsuitable" for farming if, *inter alia*, it can be productively farmed by combining operations on separate small parcels. Because that is not at all the same thing as preventing the partition of existing large parcels, in keeping with ORS 215.243, petitioner argued to LUBA and, more obliquely, to us that the county's decisional

logic does not advance a legitimate state interest and, therefore, occasions a taking. We agree with LUBA's response:

"[W]e question petitioner's apparent assumption that each regulatory section of the county's code and ORS chapter 215 must be explicitly embraced by the Agricultural Land Use Policy stated in ORS 215.243. While that statute is a very broad expression of the state's Agricultural Land Use Policy, it does not purport to be an exclusive listing of public purposes the EFU zoning statutes are adopted to further. As the Court of Appeals explained in *Hopper v. Clackamas County*, 87 Or App 167, 172, 741 P2d 921 (1987), *rev den* 304 Or 680 (1988) 'there is an overriding statutory and regulatory policy to prevent agricultural land from being diverted to nonagricultural use.' *See also McCaw Communications, Inc. v. Marion County*, 96 Or App 552, 555, 773 P2d 779 (1989)."

Affirmed.