On petitioner's petition for reconsideration filed July 21, reconsideration allowed; opinion (121 Or App 119, 854 P2d 476) clarified and adhered to September 22, 1993

# Patricia LARSON
## and Kenneth Larson,
### *Petitioners,*

*v.*

# MULTNOMAH COUNTY,
Donna Matrazzo, Stuart Sandler, Melissa Marsland, Mark Valeske, Julie Valeske, Jerome DeGraaf, Jack Sanders, Sauvie Island Conservancy and Friends of Retaining Channel Environment, *Respondents.*

## (LUBA No. 92-100; CA A79157)

859 P2d 574

David B. Smith and Dorothy S. Cofield, Tigard, for petition.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

### DEITS, P. J.

Petitioners seek Supreme Court review and, thereby, our reconsideration of our opinion holding that their state and federal constitutional taking claims are not ripe for adjudication, and rejecting their argument that they come within the "futility exception" to the ripeness requirement. We allow reconsideration, clarify our opinion and adhere to it as clarified.

The matters that we reconsider are narrow, and we do not restate the facts or the reasoning in our earlier opinion except as they relate directly to the points that we address. Petitioners quote, with apparent disapproval, the statement in our opinion that the ripeness requirement necessitates that "at least one application must be made *after* the initial denial." *Larson v. Multnomah County*, 121 Or App 119, 123, 854 P2d 476 (1993). (Emphasis supplied.) The word "after" is emphasized in the petition for review as well as here. We did not mean to suggest by that word choice that the chronological order of the applications has any necessary bearing on the denial or denials on which a property owner may base a regulatory taking claim. Indeed, the rationale for the ripeness requirement would indicate that the cumulative effect of the denials must be considered in order for a court to be able to ascertain what limitations the regulation places on the use of land and whether a deprivation of beneficial or economic use has resulted.

Petitioners also quote the following passage from our opinion:

"Before the absence of possible economic benefit from any alternative uses can be demonstrated, it is first necessary to identify what the possible alternative uses are. Petitioners have not done so. As noted above, they have simply posited that only uses in the EFU zone need be considered. We have no basis for accepting their attempt to narrow the inquiry in that way, because *they have not applied for a plan designation or zone change, independently of the single use — a marina — for which they have applied so far.*" 121 Or App at 124. (Emphasis supplied.)

Again, we have emphasized the language that petitioners emphasize in their quotation. If petitioners mean to suggest that we held that an application for a plan or zone

change is an invariable necessity for ripeness, their quotation and emphasis are taken out of context and are misleading. Petitioners argued that the futility exception excused them from making *any* further applications because, according to them, no uses that are permitted in the EFU zone could be economically viable. In rejecting that argument and before making the statement that petitioners quote, we explained:

> "Assuming without deciding the correctness of their premise, petitioners may not depend solely on uses in the EFU zone unless they have sought a zone change or plan redesignation that might allow more extensive uses. *Although we do not now decide whether a plan or zoning amendment must invariably be sought to achieve ripeness, we do hold that at least one application must be made after the initial denial, if any is available, and that a plan or zone change must be sought if only it is available.*" 121 Or App at 123. (Emphasis supplied.)

Our point was that the *futility* argument could not succeed unless it demonstrated that *no conceivable* application could result in permission for an economically viable use; we did not hold that, and expressly said that we did not decide whether, *any particular* application was a necessary precursor to *ripeness*, unless it was the only application that conceivably could be made. Petitioners appear to read our response to their argument as a statement of a universal rule that we expressly said we were not making.

The significance of that point is substantial. *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978), and *Suess Builders v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982), can be read to require that plan and zone changes be pursued, in addition to *seriatim* use—specific applications, in order to make a regulatory taking claim ripe. *Compare Cope v. City of Cannon Beach*, 317 Or 339, 343 n 4, 855 P2d 1083 (1993). We suggested in our earlier opinion in this case, 121 Or App at 122 n 1, 123 n 2, and in *Joyce v. Multnomah County*, 114 Or App 244, 835 P2d 127 (1992), that *Fifth Avenue* and *Suess Builders* may now be questionable authority on that point, at least in connection with Fifth Amendment regulatory taking claims, in the light of later United States Supreme Court cases relating to ripeness. However, in this case and in *Joyce*, we found it unnecessary to decide that question, or to locate the precise line that the

United States Supreme Court decisions draw, because the property owners in both cases failed the most minimal test for ripeness that can arguably be found in those decisions. As we explained in *Joyce*, the owner "has unsuccessfully filed one application for the approval of a particular use and has pursued no alternative approaches to achieve permission for that or any other use." 114 Or App at 247.[1] In our earlier opinion, we said that the same was true here. 121 Or App at 124.

In their petition for review, petitioners contend for the first time in this judicial review that they *did* make applications to the county for uses other than the marina. Assuming that we could otherwise reach that untimely argument, the facts on which it depends are not conclusively established by the portions of the record that petitioners cite and are not conceded by the county.[2]

Reconsideration allowed; opinion clarified and adhered to.

---

[1] We emphasize that we have not held that that *is* the test under the federal cases. In this case, and in *Joyce*, the facts fall below that lowest base line for ripeness that can conceivably be read into the cases. Therefore, it has not been necessary yet for us to ascertain how far above that base the United States Supreme Court permits the line to be placed.

[2] After petitioners filed their petition for review, the county and petitioners submitted additional memoranda on this issue at our request. We do not imply that the record lends no support to petitioners' factual assertions. However, it does not establish them conclusively, and we do not act as a fact finder in reviewing LUBA decisions. We held in our earlier opinion that LUBA did not err by refusing petitioners' request for an evidentiary hearing under ORS 197.830(13). That request did not extend to the question of whether petitioners had made the other applications to which they now refer.